*M. H. Norris,* for plaintiff. 　*A. W. Cozart,* for defendant.

---

### 15508.　Wilson *v.* The State.

Bloodworth, J. "The evidence relied upon by the State to connect the accused with the offense of having in his custody and control intoxicating liquor was wholly circumstantial in character, and did not exclude every reasonable hypothesis save that of the guilt of the accused. Accordingly the court erred in overruling the motion for a new trial." *Cummings* v. *State,* 25 *Ga. App.* 427 (103 S. E. 687); *Toney* v. *State,* 30 *Ga. App.* 61 (116 S. E. 550); *Harris* v. *State,* 28 *Ga. App.* 463 (111 S. E. 686).

　　*Judgment reversed. Broyles, C. J., and Luke, J., concur.*
　　Decided June 10, 1924.

Conviction of possessing liquor; from Douglas superior court—Judge Irwin. March 14, 1924.

From the evidence it appears that in May, 1923, a gallon jug almost full of whisky was found sitting by the side of the garden fence and in the garden of the house in which the defendant, Joe Wilson, and his family, resided with his son-in-law Ayers and the family of Ayers, and where he had resided since some time after Christmas as a tenant of McPherson. The jug was about fifteen steps from the back door of the house and "in the sight of the back door." Tracks led "from his back door by his garden. In the pasture about 200 yards . . a three-gallon jug with about two gallons in it" was found. The sheriff, in his testimony as to the finding of the whisky, said: "It was raining along then, and these tracks had been made immediately after a good big rain, enough to wet the ground pretty wet. The tracks went to the three-gallon jug of whisky and back to [Wilson's] house. . . His shoes seemed to fit the tracks that was in the field. I didn't measure any tracks, but he was making them around there all the time, and it was a small kind of track." "He was away from home when I got there and I sent after him. I had met him in the road." "I saw Ayers' tracks around in the yard. I knew one from the other. I couldn't say whether Ayers made any tracks to the place or not; he had on a shoe a good deal smaller than Mr. Wilson, with a sharp toe." It was testified that Ayers moved away from the place some time in May, after the liquor was found, and that "he was a liquor dealer all the time." A witness testified that a negro, who was with him on the day of the finding of the liquor by the sheriff and before the sheriff went there, got some whisky after going to that place; the witness did not know whether the negro got it at Wilson's house or not, or whether Wilson was then at home; the witness was about a quarter of a mile away when he saw the negro go into Wilson's front yard and towards the house, but did not know whether the negro went into the house; the negro returned with whisky in a gallon can, after about thirty minutes. The defendant, in his statement at the trial, denied knowledge of the whisky, and said that no negro came to his house for liquor, so far as he knew. There was testimony as to his good character.

*J. R. Hutcheson,* for plaintiff in error.
*E. S. Griffith, solicitor-general,* contra.